1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CHRIS PURTILL,                               No.  2:22-cv-0199 KJM DB P

12                   Petitioner,

13          v.                                     FINDINGS AND RECOMMENDATIONS

14    PATRICK COVELLO,

15                   Respondent.

16

17          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18    under 28 U.S.C. § 2254.  Petitioner challenges his convictions for lewd and lascivious conduct on

19    a child imposed by the Sacramento County Superior Court in 2017.  Before the court are

20    respondent's motion to dismiss the petition as untimely and because one claim is unexhausted,

21    petitioner's motion to stay these proceedings, and petitioner's request for DNA testing of trial

22    evidence.  For the reasons set forth below, this court will recommend respondent's motion to

23    dismiss be granted because the petition is untimely.  This court further recommends that

24    petitioner's motions to stay and for DNA testing be denied as moot.

25    ////

26    ////

27    ////

28    ////

                                                   1

1

**BACKGROUND**

2          After a jury trial, on October 26, 2017, petitioner was convicted on seven charges of lewd

3    and lascivious conduct on a child.  (ECF No. 13-1.[1])  On November 28, 2017, the superior court

4    sentenced him to a determinate state prison term of twelve years.  (Id.)  On June 18, 2019, the

5    California Court of Appeal affirmed the judgment.  (ECF No. 13-2.)  The California Supreme

6    Court denied review on August 21, 2019.  (ECF Nos. 13-3, 13-4.)

7          Petitioner filed four habeas petitions in state court:[2]

8          1.  Petition filed August 25, 2019[3] in Sacramento County Superior Court.  The Superior

9    Court denied the petition in a reasoned opinion on October 9, 2019.  (ECF Nos. 13-5, 13-6.)  The

10   Superior Court denied petitioner's motion for reconsideration on January 13, 2020.  (ECF Nos.

11   13-7, 13-8.)

12         2.  Second petition filed September 3, 2020 in the California Court of Appeal.[4]  The Court

13   of Appeal denied the petition without comment on September 18, 2020.  (ECF Nos. 13-9, 13-10.)

14         3.  Third petition filed July 21, 2021 in the California Supreme Court.  The California

15   Supreme Court denied the petition on October 13, 2021 in a brief order:  "The petition for writ of

16   habeas corpus is denied. (*See People v. Duvall* (1995) 9 Cal.4th 464, 474 [a petition for writ of

17   habeas corpus must include copies of reasonably available documentary evidence]; *In re Dixon*

18   ////

19

_____

20   [1] Respondent lodged relevant portions of the state court record.  (See ECF No. 13.)  This court
     refers to those documents by their electronic filing numbers.

21
22   [2] Respondent provides copies of these state court filings.  Petitioner does not indicate that he filed
     any additional state court petitions or that the state records provided are not correct.  Based on the
     absence of any dispute regarding these documents, the court may take judicial notice of them.
23   See Fed. R. Evid. 201(b).

24   [3] Because petitioner was incarcerated when he filed his state and federal habeas petitions, he is
     entitled to the benefit of the "mailbox rule."  See Campbell v. Henry, 614 F.3d 1056, 1059 (9th
25   Cir. 2010).  Under the mailbox rule, a prisoner's submission to the court is deemed filed on the
     date they provide it to the prison for mailing.  Id. at 1058-59.
26

27   [4] The post-conviction process in California requires a petitioner to file original habeas petitions in
     each successive court.  See Flemming v. Matteson, 26 F.4th 1136, 1144 (9th Cir. 2022).  A
28   petitioner in California does not appeal the denial of a habeas petition by a lower court.

1  (1953) 41 Cal.2d 756, 759 [courts will not entertain habeas corpus claims that could have been,

2  but were not, raised on appeal].)"  (ECF Nos. 13-11, 13-12.)

3       4.  Fourth petition filed January 21, 2022 in the Sacramento County Superior Court.  The

4  Superior Court denied it on March 10, 2022.  (ECF Nos. 13-13, 13-4.)

5       Petitioner filed the present habeas petition in this court on January 23, 2022.  (ECF No. 1.)

6  He alleges he was denied a fair trial because:  (1) jurors saw him entering the courtroom in

7  handcuffs and with a police escort; (2) evidence was not subjected to DNA testing; (3) his trial

8  attorney failed to seek to exclude the testimony of the minor victim regarding the effects of the

9  medication Adderall; and (4) appellate counsel failed to raise ground (1) on appeal.

10      Respondent seeks to dismiss the petition because it is untimely.  Respondent further

11  contends dismissal is required because the petition contains an unexhausted claim.  (ECF No. 11.)

12  Petitioner concedes that one claim is unexhausted but otherwise opposes the motion.  (ECF No.

13  22.)  Respondent filed a reply (ECF No. 24).

14      Petitioner seeks a stay of these proceedings to permit him to complete exhaustion of his

15  state remedies for the unexhausted claim.  (ECF No. 16.)  Respondent filed an opposition to the

16  motion to stay (ECF No. 19) and petitioner filed a reply (ECF No. 26).  Petitioner also filed a

17  document identified in the docket as a first amended petition.  (ECF No. 18.)  While petitioner

18  filed the document on the standard form for a habeas corpus petition, it is apparent he did not

19  intend to amend his petition.  Rather, in that document petitioner requests DNA testing of

20  evidence introduced at trial.

21                              **MOTION TO DISMISS**

22      Respondent first argues the petition is untimely.  Respondent contends petitioner is not

23  entitled to sufficient tolling of the statute of limitations during his state proceedings because he

24  unreasonably delayed filing petitions in the California Court of Appeal and the California

25  Supreme Court.  Respondent next argues that petitioner failed to exhaust ground 2.  Therefore,

26  respondent contends, the petition should be dismissed because it contains both exhausted and

27  unexhausted claims.  Because this court finds the petition should be dismissed as untimely, this

28  court does not reach the exhaustion issue.

1   **I. Legal Standards on Motion to Dismiss**

2          Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

3   petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the

4   petitioner is not entitled to relief in the district court."  The Court of Appeals for the Ninth Circuit

5   construes a motion to dismiss a habeas petition as a request for the court to dismiss under Rule 4.

6   See O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990).  Accordingly, the court will review

7   respondent's motion to dismiss pursuant to its authority under Rule 4.

8          In ruling on a motion to dismiss, the court "must accept factual allegations in the [petition]

9   as true and construe the pleadings in the light most favorable to the non-moving party."  Fayer v.

10  Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting Manzarek v. St. Paul Fire & Marine Ins.

11  Co., 519 F.3d 1025, 1030 (9th Cir. 2008)).  In general, exhibits attached to a pleading are "part of

12  the pleading for all purposes."  Hartmann v. Cal. Dept. of Corr. and Rehab., 707 F.3d 1114, 1124

13  (9th Cir. 2013) (quoting Fed. R. Civ. P. 10(c)).

14  **II.  Statute of Limitations**

15      **A.  Legal Standards**

16      The habeas statute's one-year statute of limitations provides:

17          A 1-year period of limitation shall apply to an application for a writ
            of habeas corpus by a person in custody pursuant to the judgment of
18          a State court. The limitation period shall run from the latest of—

19              (A) the date on which the judgment became final by the
                conclusion of direct review or the expiration of the time for
20              seeking such review;

21              (B) the date on which the impediment to filing an application
                created by State action in violation of the Constitution or laws
22              of the United States is removed, if the applicant was
                prevented from filing by such State action;
23
                (C) the date on which the constitutional right asserted was
24              initially recognized by the Supreme Court, if the right has
                been newly recognized by the Supreme Court and made
25              retroactively applicable to cases on collateral review; or

26              (D) the date on which the factual predicate of the claim or
                claims presented could have been discovered through the
27              exercise of due diligence.

28  28 U.S.C. § 2244(d)(1).

4

Under subsection (d)(1)(A), the limitations period runs from the time a petition for certiorari to the United States Supreme Court was due, or, if one was filed, from the final decision by that court.  Lawrence v. Florida, 549 U.S. 327, 339 (2007).

The limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  A state petition is "properly filed," and thus qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz v. Bennett, 531 U.S. 4, 8 (2000).  "The period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled—because it is part of a single round of habeas relief—so long as the filing is timely under California law."  Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010) (citing Evans v. Chavis, 546 U.S. 189, 191-93 (2006)); see also Carey v. Saffold, 536 U.S. 214, 216-17 (2002) (Within California's state collateral review system, a properly filed petition is considered "pending" under section 2244(d)(2) during its pendency in the reviewing court as well as during the interval between a lower state court's decision and the filing of a petition in a higher court, provided the latter is filed within a "reasonable time.")

The limitations period may be equitably tolled if a petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  An extraordinary circumstance must be more than merely "'oversight, miscalculation or negligence on [the petitioner's] part.'"  Waldron–Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)).  Rather, petitioner must show that some "external force" "stood in his way."  Id. "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule."  Lakey v. Hickman, 633 F.3d 782 (9th Cir. 2011) (citations and internal quotation marks omitted).

In addition, the statute of limitations is subject to an actual innocence exception.  A petitioner may have his untimely-filed case heard on the merits if he can persuade the district

court that it is more likely than not that no reasonable juror would have convicted him.
McQuiggin v. Perkins, 569 U.S. 383, 400-01 (2013); Lee v. Lampert, 653 F.3d 929, 937 (9th Cir. 2011) (en banc).  "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing."  McQuiggin, 569 U.S. at 399.  For example, the "court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability" of his evidence of innocence.  Id.

**B. Discussion**

**1. The Petition is Facially Untimely**

Petitioner had one year to file his federal petition from the date on which the judgment became final by the conclusion of direct review, or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).[5]  The California Supreme Court denied review on August 21, 2019.  The state direct review process became "final" within the meaning of § 2244(d)(1)(A), when the time for filing a petition for writ of certiorari expired ninety days later, on November 19, 2019.  U.S. Sup. Ct. R. 13; Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999).  The one-year limitation period commenced running the following day - November 20, 2019.  Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)).  Therefore, the last day to file a federal petition was November 19, 2020.

Petitioner filed his federal habeas petition on January 23, 2022, outside the limitations period.

**2. Statutory Tolling does not Render the Petition Timely**

The limitation period is tolled during the time a properly filed state petition is pending.  28 U.S.C. §2244(d)(2).  A petition is "pending" until it has achieved final resolution through the state's postconviction procedures.  Carey, 536 U.S. at 220.  In California, a state habeas petition remains pending between a lower court's denial and the filing of a habeas petition in a higher state court as long as that period is "reasonable" under state law.  Evans, 546 U.S. at 191-92, 198;

---

[5] Petitioner does not contend, and this court finds no indication, that any of the other trigger dates for commencement of the limitations period apply here.  See 28 U.S.C. § 2244(d)(1)(B), (C), and (D).

1   see Carey, 536 U.S. at 222 (unlike most states, which "specify precise time limits, such as 30 or

2   45 days, within which an appeal must be taken," California "applies a general 'reasonableness'

3   standard" when determining timeliness); Robinson v. Lewis, 9 Cal. 5th 883, 897 (2020)

4   ("California courts employ a reasonableness standard.").

5                        **a. State Law Timeliness Standards**

6           In determining reasonableness, California courts consider three factors.  Robinson II, 9

7   Cal. 5th at 897.[6]  First, "a claim must be presented without substantial delay," measured from the

8   time the petitioner . . . knew, or reasonably should have known, of the information offered in

9   support of the claim and the legal basis for the claim."  Id. at 898 (internal quotations and citation

10  omitted).  Second, if the petition was filed with substantial delay, it may still be considered on the

11  merits if the "petitioner can demonstrate good cause for the delay."  Id.  Third, even if the

12  petitioner cannot demonstrate good cause for a substantial delay, the petition may be considered

13  on the merits if it falls within one of four narrow exceptions, only three of which apply to

14  noncapital cases:

15                  (1) that error of constitutional magnitude led to a trial that was so
                    fundamentally unfair that absent the error no reasonable judge or jury
16                  would have convicted the petitioner; (2) that the petitioner is actually
                    innocent of the crime or crimes of which he or she was convicted;
17                  and (3) that the petitioner was convicted or sentenced under an
                    invalid statute.
18
19  Id. (internal quotations and citation omitted).

20          The fact the California Court of Appeal and California Supreme Court did not expressly

21  deny petitioner's claims on the grounds of untimeliness is not determinative of the timeliness

22  question for purposes of statutory tolling.  See Evans, 546 U.S. at 194 (A federal court should not

23  presume that a California state court's denial on the merits means that a petition was timely.).

24  ─────────────────────
    [6] The California Supreme Court's decision in Robinson ("Robinson II") was the result of a
25  request by the Ninth Circuit Court of Appeals for certification on the following question:  "what
    constitutes a timely filing of a habeas corpus petition in state court?"  Robinson v. Lewis, 795
26  F.3d 926 (9th Cir. 2015) ("Robinson I").  As a result of the California Supreme Court's
    explanation, the Ninth Circuit reversed a district court holding that Mr. Robinson was not entitled
27  to statutory tolling for 66 and 91-day gap intervals.  Robinson v. Lewis, 824 F. App'x 494 (9th
    Cir. 2020) ("Robinson III").
28
                                    7

When the timeliness of a federal habeas petition is at issue and the state courts have not indicated whether the underlying claim was timely, "the federal court 'must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness.'"   Stewart v. Cate, 757 F.3d 929, 935 (9th Cir. 2014) (quoting Evans, 546 U.S. at 198).

**(i)   When is Delay "Substantial?"**

When determining whether a delay was substantial, the California Supreme Court created a "safe harbor" period.  A safe harbor lets petitioners "know that a claim presented to a higher court within that time period will never be considered untimely due to that delay."   Robinson II, 9 Cal. 5th at 899.  The Court first found that a safe harbor period of six months was unduly generous, and "might endanger gap tolling in federal court" because the United States Supreme Court had "observed that it did not 'see how an unexplained delay of this magnitude [six months] could fall within the scope of the federal statutory word 'pending.'"   Id. at 898 (quoting Evans, 546 U.S. at 201).  The California Supreme Court noted that "[w]hatever difficulties a petitioner might encounter in reasserting a claim already made in the lower court can usually be met in less than six months."   Id.  The Court went on to find that a safe harbor period of 120 days was reasonable.   Id. at 901.  With that clarification, the Ninth Circuit held that when a claim is presented within the 120-day safe harbor period, "there is no substantial delay and the 'ordinary state collateral review process is in continuance.'"   Robinson III, 824 F. App'x at 497 (citation omitted).  Gap delay beyond this 120-day "safe harbor" is not "automatically ... considered substantial delay" but is a "relevant factor for the court to consider as part of its overall [timeliness] analysis."   Robinson II, 9 Cal. 5th at 902. "The petitioner bears the burden to plead and then prove all of the relevant allegations."   Id. at 898.

**(ii)   What Constitutes Good Cause for Substantial Delay?**

After establishing the safe harbor of 120 days, the California Supreme Court in Robinson II stated that "delay beyond the specified time would be subject to the normal *Robbins* analysis. That is, we would consider whether, under all of the circumstances, gap delay longer than 120 days constituted substantial delay and, if so, whether the petitioner demonstrated good cause for the delay or an exception applied."  9 Cal. 5th at 901 (citing In re Robbins, 18 Cal. 4th 770, 780

8

1   (1998), superseded on other grounds by In re Friend, 11 Cal. 5th 720 (2021).)  In Robbins, the

2   California Supreme Court noted that "[g]ood cause for substantial delay may be established if, for

3   example, the petitioner can demonstrate that because he or she was conducting an ongoing

4   investigation into at least one potentially meritorious claim, the petitioner delayed presentation of

5   one or more other known claims in order to avoid the piecemeal presentation of claims."  18 Cal.

6   4th at 780 (emphasis omitted).  The Court rejected the petitioner's attempts to establish good

7   cause:  (1) allegations that petitioner was incarcerated in another state were conclusory; (2)

8   petitioner failed to show that his mental illness affected reasonably competent counsel's ability to

9   file a timely petition; (3) counsel's ignorance of their obligation to conduct an investigation to

10  state claims was not reasonable; and (4) the petitioner failed to show the government in fact

11  withheld information necessary to the petitioner's claim.[7]  Id. at 807-10.

12          Since Robbins, California courts have found petitioners failed to establish good cause

13  where:  (1) their allegations are conclusory and/or vague, In re Gallego,18 Cal. 4th 825 (1998);

14  (2) their allegations are belied by evidence in the record, In re Reno, 55 Cal. 4th 428, 463 (2012)

15  (petitioner's statement that facts supporting the claim were unknown contradicted by evidence

16  that they were known at the time of trial or the first habeas petition), superseded on other grounds

17  by In re Friend, 11 Cal. 5th 720 (2021); (3) they failed to show due diligence in pursuing their

18  claims, In re Clark, 5 Cal. 4th 750, 775 (1993) ("If a petitioner had reason to suspect that a basis

19  for habeas corpus relief was available, but did nothing to promptly confirm those suspicions, that

20  failure must be justified."), superseded on other grounds by In re Friend, 11 Cal. 5th 720 (2021);

21  and (4) they failed to show a mistaken belief about the law was reasonable, In re Douglas, 200

22  Cal. App. 4th 236, 244 (2011).

23          California courts found good cause for a substantial delay where:  (1) the petitioner's

24  counsel was unable to obtain funding to conduct an investigation, In re Sodersten, 146 Cal. App.

25  _____

26  [7] Robbins and many of the California cases citing it were capital cases.  Therefore, most, if not all,
    of the petitioners had counsel.  Not all of the arguments for good cause in those cases will be
27  applicable in the present case, a non-capital case in which the petitioner is pro se.  However, the
    general proposition that a petitioner must make more than general allegations of the reasons for
28  delay are certainly applicable to a case with a pro se petitioner.

4th 1163, 1221 (2007); and (2) the petitioner had no way to know the legal basis for his claim until informed by the prison, In re Brown, 45 Cal. App. 5th 699, 725 (2020), abrogated on other grounds by In re Milton, 13 Cal. 5th 893, 515 P.3d 34 (2022).

A factor in determining good cause can be whether the petitioner has "substantially rewritten" a habeas petition filed in a higher court following a lower court's denial of the petition. Osumi v. Giurbino, 445 F. Supp. 2d 1152, 1159 (C.D. Cal. 2006), aff'd, 312 F. App'x 23 (9th Cir. 2008); see also Davis v. Kibler, No. 2:21-CV-7620 FMO JDE, 2022 WL 2121907, at *5 (C.D. Cal. Feb. 24, 2022), rep. and reco. adopted, 2022 WL 3012833 (C.D. Cal. May 31, 2022); Warburton v. Walker, 548 F. Supp. 2d 835, 840 (C.D. Cal. 2008) ("[P]etitioner's 69-day delay between the Superior Court's denial of his habeas corpus petition and petitioner's subsequent filing of his habeas corpus petition in the California Court of Appeal appears to be reasonable since, after his unsuccessful petition to the Superior Court, petitioner refined his arguments and provided further factual and legal support for his claims in his petition to the Court of Appeal."); Bui v. Hedgpeth, 516 F. Supp. 2d 1170, 1174–75 (C.D. Cal. 2007).

When examining the related question of equitable tolling, courts in the Ninth Circuit have held that a petitioner who makes an adequate showing of good cause for a delay, may be entitled to the opportunity to further develop the record.  In Sossa v. Diaz, 729 F.3d 1225, 1236 (9th Cir. 2013), the petitioner made specific allegations that his delayed and/or denied requests for library access and his problems with a broken photocopier for most of the three months he had to prepare an amended petition caused him to file two days beyond a deadline.  The court found these allegations sufficient to require further factual development and remanded the issue to the district court on that basis.  729 F.3d at 1237.  In Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003), the Ninth Circuit held that the petitioner's allegations of mental incompetency and records showing his severe mental illness were sufficient to justify further factual development of the petitioner's claim that he was entitled to equitable tolling.  In general, specific allegations, supported by evidence, showing a cause for delay justified further factual development.  See Cook v. Pfier, No. 2:21-cv-2252 SVW AFM, 2021 WL 8822033, at *2, 3 (C.D. Cal. Sept. 10, 2021) (petitioner's allegation that delay caused by counsel's failure to notify him that the state

1   court denied his appeal was supported by evidence, "including emails, appellate counsel's

2   declaration, and mail logs," and sufficient to justify factual development).

3   ### (iii)  Exceptions to Timeliness Requirement

4         As described above, California case law sets out three exceptions to the timeliness

5   requirement which could be applicable in this case:  (1) a trial so fundamentally unfair that absent

6   the error no reasonable jury could have convicted the petitioner; (2) actual innocence; and (3)

7   conviction under an invalid statute.  The first exception is "narrow" and the petitioner's claim

8   must "point unerringly to innocence or reduced culpability."  Reno, 55 Cal. 4th at 474 (quoting

9   Clark, 5 Cal. 4th at 797 n. 32).  A petitioner could meet the actual innocence exception by

10  "offer[ing] newly discovered, irrefutable evidence of innocence of the offense or degree of

11  offense of which the petitioner was convicted."  Clark, 5 Cal. 4th at 797 n. 33.

12  ### b.  Gaps Between State Court Filings in this Case

13        Before considering whether petitioner is entitled to tolling for the intervals between his

14  state court filings, this court notes that the limitations clock ran between the California Supreme

15  Court's denial of petitioner's habeas petition and his filing in this court.[8]  The clock thus ran from

16  October 14, 2021 to January 23, 2022 – a total of 101 days.  That leaves petitioner with 264 days

17  in the one-year limitations period.  Any gap time that does not toll the statute of limitations may

18  not, then, exceed 264 days if the federal petition is to be considered timely.

19  ### (i)  First State Habeas Petition

20        The first state petition was filed in the Superior Court on August 25, 2019, but the

21  limitation period did not commence until November 20, 2019, after direct review was final.  The

22  parties do not dispute that the limitation clock stopped for the time period of November 20, 2019,

---

[8] Petitioner filed a subsequent petition in the superior court.  He does not argue that the pendency of that petition should count toward tolling the statute of limitations.  Even if he did, that argument would fail because petitioner was not then working his way "up the ladder" to "complete[ ] a full round of collateral review."  Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003); see Nino v. Galaza, 183 F.3d 1003, 1005 (1999) (The limitations period only remains tolled during the intervals between the state court's denial and the filing of a petition "at the next state appellate level.").  Further, even if it did count, the limitations clock would only be tolled for a very short period of time.  Petitioner filed that superior court petition on January 21, 2022, just two days before he filed his federal petition on January 23.

1   the date the statute of limitation commenced, to January 13, 2020, the date the Superior Court

2   denied petitioner's motion for reconsideration of the denial of the first state petition.

3   **(ii)  Second State Habeas Petition**

4          After the Superior Court's denial of the motion for reconsideration, the first day petitioner

5   could have filed his second petition in the California Court of Appeal was January 14, 2020.

6   Petitioner filed it 233 days later, on September 3, 2020.  Respondent argues that the 233-day time

7   period was unreasonable and did not toll the statute.

8          Under Robinson II, the first question to determine whether the intervals between state

9   court filings qualify as statutory tolling is whether these intervals were "substantial."  Robinson

10  II, 9 Cal. 5th at 898.  The 233-day time gap is significantly longer than the 120 days deemed

11  presumptively reasonable.  It even exceeds the six-month (180-day) period rejected by the

12  California Supreme Court as a safe harbor.  Nothing in the record mitigates a finding that the

13  delay was substantial.  See Moore v. Pollard, No. CV 19-7771-MCS (JPR), 2022 WL 2079722, at

14  *8 (C.D. Cal. Mar. 23, 2022), rep. and reco. adopted, 2022 WL 1591692 (C.D. Cal. May 19,

15  2022) (302-day delay was substantial under Robinson II); Clarke v. Matteson, No. 2:20-cv-

16  06299-VAP (SP), 2021 WL 6693711, at *5 (C.D. Cal. Sept. 8, 2021) (191-day delay substantial),

17  rep. and reco. adopted, 2022 WL 228151 (C.D. Cal. Jan. 25, 2022); Manley v. Davey, No. 2:17-

18  cv-2686-TLN-DMC-P, 2021 WL 1102724, at *8 (E.D. Cal. Mar. 23, 2021) ("nearly five months"

19  between filings substantial), rep. and reco. adopted, 2021 WL 2805645 (E.D. Cal. July 6, 2021);

20  cf. Evans v. Chavis, 546 U.S. 189, 201 (2006) (in case decided prior to California Supreme Court

21  decision in Robinson II, U.S. Supreme Court held that an unexplained, and hence unjustified, six-

22  month filing delay not reasonable under state law).

23         Petitioner does not argue to the contrary.  (See ECF No. 22 at 1 (Petitioner "agrees" "that

24  an exceptional amount of time passed between each filing.").)  Petitioner's delay in filing his

25  second state petition was thus unreasonable unless he can show good cause for the delay or that

26  his claims fall under one of the narrow exceptions set out in Robinson II.  Robinson II, 9 Cal. 5th

27  at 898.

28  ////

While petitioner does not explicitly argue good cause under <u>Robinson</u> II, his arguments that he should be entitled to equitable tolling are essentially attempts to show good cause. This court considers those arguments here.

According to petitioner, prison shut-downs and postal delays caused by the COVID-19 pandemic affected his ability to conduct legal research and send and receive mail. Petitioner makes the following contentions regarding the effect of prison shut-downs:

- There were "constant periods of quarantine for weeks, if not months, at a time."
- Starting in February 2020, inmates could only leave their cells for five-minute periods of time every fourth day to shower.
- For thirty months during the pandemic, prisoners did not have physical access to the law library. Just recently they regained access, and then only "on a very limited basis."
- Petitioner had "zero physical access to conduct research and copying" at "critical times" between and during filing petitions.
- Petitioner lacked access to "any legal forms or files."

Petitioner also alleges his ability to send and receive mail was affected:

- Both the U.S. Postal Service and the prison's mailroom experienced delays.
- "Sometimes mail would take more than six-months from the postmark date to arrive to the inmate."
- Because he lacked law library access, petitioner mailed forms that required copying to his mother.
- Sometimes, petitioner had to wait for forms his mother printed and mailed to him.
- On December 6, 2020, petitioner was moved from C-yard to a quarantine area in the B-yard gym because he tested positive for COVID-19. His mail was even more delayed during that time because it had to be re-routed for delivery in his new area. When petitioner was returned to his cell on December 16, "any mail that might have possibly been rerouted to the B-yard gym would again have to be returned to the mailroom for another reroute." Rerouted mail was not prioritized.

13

- In March 2021, petitioner was again moved to a quarantine area for four days which was "yet another cause for delay in the petitioner's otherwise diligent pursuit of his case."

With respect to mail delays, petitioner makes only very general arguments. He fails to allege specific facts showing that he experienced any significant delay, or, for that matter, any delay, in sending or receiving mail. The only mail petitioner mentions are documents sent to and from his mother. However, petitioner fails to allege that any of those mailings were, in fact, delayed. Moreover, petitioner's contentions regarding mail delay while he was quarantined are not relevant to the gap before his second petition. Petitioner filed the second petition on September 3, 2020. He claims he was first quarantined in December 2020. Petitioner's contention that he was unable to prepare his second state court petition due to mail delays is unsupported.

With respect to prison shutdowns, this court also finds petitioner's contentions insufficiently specific. Petitioner claims he had no <u>physical</u> access to the law library but does not explain what, if any, other kinds of access he had to the library, why those other types of access were insufficient, why he required law library access to complete his petitions, or what efforts he made to counter the alleged deprivation of library access. Cf. Foster v. Cate, No. 11-CV-2270-LAB WMC, 2013 WL 4544337, at *10 (S.D. Cal. Aug. 26, 2013) (In considering equitable tolling, the court concluded, "[w]ithout specific information regarding the duration of the alleged deprivation, Petitioner's diligent efforts to counter that alleged deprivation, or the necessity of the withheld documents, this Court can only conclude it was Petitioner's lack of diligence, and not external factors, that caused Petitioner's delay."). Respondent presents a copy of the CDCR Departmental Operations Manual which provides that an inmate who is unable to physically access the law library "may request access to legal material through delivery of those materials to the inmate by library staff. This process is referred to as law library paging." (ECF No. 25-1.) While that evidence does not show a paging system was, in fact, available to petitioner, it does lend some support to this court's conclusion that to show diligence, petitioner must explain why other methods of obtaining legal materials were either unavailable or excessively time-

14

consuming.  Similarly, with respect to his alleged lack of access to forms, petitioner does not explain what he did to try to get the necessary forms.

With respect to the work involved in preparing his appellate court petition, this court finds some differences between petitioner's superior court and appellate court petitions.  (Compare ECF No. 13-5 with ECF No. 13-9.)  First, while petitioner's description of his shackling claim in both courts is nearly identical, in his appellate court petition he added a declaration from a witness and two new citations to legal authority.  In support of the second petition's challenge to testimony at the Evidence Code § 402 hearing, petitioner added several exhibits.  Petitioner also added a claim of ineffective assistance of appellate counsel in his second petition.  In addition, while he did not re-state his claim regarding the lack of DNA testing, he did move the Court of Appeal to be permitted to conduct such testing.

These differences between petitioner's first and second state petitions are not insubstantial.  They reflect that petitioner spent time collecting documents and conducting research.  However, the fact petitioner spent time preparing his second petition is not good cause on its own.  Petitioner fails to explain how much time he spent, just what specific hurdles he actually faced, or how those hurdles account for the delay.  Petitioner does not show that he required well over seven months to prepare his second petition.

This court does not doubt that lockdowns and restrictions on prisoner movement instituted due to the COVID-19 pandemic made preparation of legal filings difficult.  That said, this court may not simply assume those difficulties were so severe that a reasonably diligent prisoner could not file a reasonably timely pleading.  Petitioner does nothing to show he was reasonably diligent in preparing his second petition.  This court finds that he has not demonstrated good cause for the interval between his first and second petitions nor has he made a showing sufficient to justify further development of the record on the issue.

### (iii)  Third State Habeas Petition

The Court of Appeal denied petitioner's second petition on September 13, 2020.  Petitioner filed his third petition in the California Supreme Court on July 21, 2021, 306 days later.

////

15

As described above, petitioner's general arguments regarding prison shutdowns and delays in mail do not provide any basis for a finding of good cause.  In addition, petitioner's quarantines were relatively brief – totaling only fourteen days.  While it is reasonable to think petitioner had difficulty preparing his third petition while there, that still left him 292 days, well over nine months, preparation time.

Further, there is no basis to find that petitioner's third petition required a good deal of work.  This court finds virtually no differences between the petition filed in the Court of Appeal and that filed in the California Supreme Court.  (<u>Compare</u> ECF No. 13-9 <u>with</u> ECF No. 13-11.)  The only substantive difference appears to be that petitioner included one or two additional case citations in the petition to the Supreme Court.

Petitioner fails to allege facts sufficient to show good cause for his delay in filing his third petition or to justify evidentiary development of the issue.  The next question, then, is whether petitioner makes allegations, through his petition or otherwise, sufficient to show that he does, or can, meet one of the three exceptions to the timeliness bar.  <u>See</u> <u>Robinson</u> II, 9 Cal. 5th at 898.

**(iv)  Petitioner does not Show Exceptions to Untimeliness**

Petitioner does not allege facts to support any of the three exceptions identified in <u>Robinson</u> II.  Again, they are:  (1) a trial so fundamentally unfair that absent the error no reasonable jury could have convicted the petitioner; (2) actual innocence; and (3) conviction under an invalid statute.

With respect to the first exception, none of petitioner's claims amount to an "error of constitutional magnitude [that] led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner."  <u>Robinson</u> II, 9 Cal. 5th at 898.  "[T]o qualify under this narrow exception, the claim must be such that it would 'undermine the entire prosecution case and point unerringly to innocence or reduced culpability.'"  <u>Reno</u>, 55 Cal. 4th at 474 (quoting <u>Clark</u>, 5 Cal. 4th at 797, n. 32).  For example, if a petitioner claimed that he was denied the right to present evidence at trial, he "'would have to persuade the court that had the excluded evidence been presented, he would have been acquitted or convicted of a lesser

////

16

1    offense.'"  Clark, 5 Cal. 4th at 797, n. 32 (quoting People v. Gonzalez, 51 Cal.3d 1179, 1246

2    (1990)).

3              The Court of Appeal summarized the facts presented at trial, primarily as they related to

4    petitioner's claims that the trial court erred in excluding evidence of the potential punishment for

5    sex offenses depending on the victim's age.  In brief, petitioner was convicted of sexual

6    misconduct with the son of a close friend.  The victim testified at trial regarding the abuse.  It

7    appears that members of the victim's family, who "discovered" petitioner and the victim having

8    sex together, also testified.

9              Petitioner raises four claims here.  First, he contends that his trial was unfair because

10   jurors would have been prejudiced when they saw him in the hallway before trial in shackles.

11   Second, petitioner contends the victim's clothing and bedding should have been tested for DNA.

12   He states that such evidence was "potentially exculpatory."  Third, petitioner alleges his trial

13   counsel was constitutionally ineffective when they failed to introduce expert testimony regarding

14   the effects of Adderall on the victim at a pretrial hearing.  He complains that trial counsel allowed

15   the court to hear only the testimony of the victim about those effects.  As a result of the hearing,

16   the trial court ruled that the defense could not present evidence about the victim's use of Adderall.

17   Fourth, petitioner contends his appellate counsel were constitutionally ineffective when they

18   failed to raise the shackling claim on appeal.  Petitioner contends counsel told him to raise the

19   issue in a habeas petition.  He argues this was unreasonable because he does not have the

20   resources that an attorney would have to conduct an investigation to support the claim.

21             Petitioner does not explain how any of the claims point to his innocence or reduced

22   culpability.  Rather than demonstrating innocence, petitioner contends he was prejudiced by

23   shackling and by the lack of expert testimony at the pretrial hearing.  Further, the fact that DNA

24   evidence may have been "potentially" exculpatory is certainly not a showing that jurors would

25   have convicted petitioner of a lesser offense or acquitted him if DNA testing had been conducted.

26             With respect to the second exception to the state's timeliness bar, petitioner does not

27   allege facts sufficient to demonstrate that he is "actually innocent" of the crimes nor does he ever

28

allege that he is.[9]  Finally, in none of petitioner's claims does he contend that he was convicted or sentenced under an invalid statute.

### c. Conclusion re Statutory Tolling

Petitioner fails to show good cause for the substantial gaps between his first, second, and third state petitions.  Nor does he meet any of the exceptions to the state's timeliness requirement.  Petitioner is thus not entitled to statutory tolling of the 365-day limitations period for those intervals.  The limitations clock ran for 101 days between the California Supreme Court's denial of petitioner's third habeas petition and the date he filed the present federal petition.  Petitioner's federal petition was only timely if the limitations clock was not running for more than the 264 days remaining in the one-year limitations period.  The 306-day interval between petitioner's second and third state petitions easily surpasses that mark.  When the 233-day interval between petitioner's first and second petitions is also considered, the untolled time between the end of direct review and petitioner's filing in this court totals 640 days.[10]  Statutory tolling does not render the petition timely.

### 3.  Petitioner is not Entitled to Equitable Tolling

A habeas petitioner is entitled to equitable tolling of the one-year statute of limitations only if the petitioner shows:  "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "For a litigant to demonstrate he has been pursuing his rights diligently, and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in

---

[9] Because petitioner fails to make any argument or showing of actual innocence, he is also not eligible for the federal exception to timeliness on that basis.  Only a "colorable claim of factual innocence" will support the actual innocence exception.  Schlup v. Delo, 513 U.S. 298 (1995).  This exception is concerned with actual, as opposed to legal, innocence and must be based on reliable evidence not presented at trial.  Id. at 327; Calderon v. Thompson, 523 U.S. 538, 559 (1998).

[10] This figure accounts for the 233 days in the first gap between denial of the first state habeas petition and filing the second petition, the 306-day second gap interval, and the 101 days between the California Supreme Court's denial of petitioner's third habeas petition and the date he filed the federal petition here.

pursuing his rights not only while an impediment to filing caused by an extraordinary

circumstance existed, but before and after as well, up to the time of filing his claim in federal

court." Smith v. Davis, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc) (internal quotation marks

and citation omitted).  In other words, "[w]hen external forces, rather than a petitioner's lack of

diligence, account for the failure to file a timely claim, equitable tolling of the statute of

limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) (citations

omitted).  "The diligence required for equitable tolling purposes is 'reasonable diligence,' not

'maximum feasible diligence.'" Holland, 560 U.S. at 653 (internal citations and some quotation

marks omitted).

Extraordinary circumstances need not be an "actual impossibility; rather, equitable tolling

is appropriate where 'it would have technically been possible for a prisoner to file a petition, but a

prisoner would have likely been unable to do so.'" Grant v. Swarthout, 862 F.3d 914, 918 (9th

Cir. 2017) (emphasis omitted) (quoting Gibbs v. Legrand, 767 F.3d 879, 888 (9th Cir. 2014)).

That said, equitable tolling should be applied sparingly.  See Waldron-Ramsey v. Pacholke, 556

F.3d 1008, 1011 (9th Cir. 2009) ("To apply the doctrine in "extraordinary circumstances"

necessarily suggests the doctrine's rarity . . . .").

Petitioner bears the burden of alleging facts that would give rise to tolling,  Pace, 544 U.S.

at 418, and "[a] habeas petitioner ... should receive an evidentiary hearing when he makes 'a

good-faith allegation that would, if true, entitle him to equitable tolling,'" Roy v. Lampert, 465

F.3d 964, 969 (9th Cir. 2006) (quoting Laws v. Lamarque, 351 F.3d 919, 921 (9th Cir. 2003)).

Courts in this circuit have considered claims like petitioner's that lockdowns and mail

interruptions caused by the COVID-19 pandemic prevented timely filing of state habeas petitions.

Where, like petitioner in the present case, the petitioners made only general allegations about the

effects of lockdowns and failed to show they had diligently pursued their rights, courts found

those allegations insufficient to justify the application of equitable tolling.

> Although Petitioner asserts that the prison where he was confined has
> "virtually been on a limited movement and otherwise 'lockdown'
> since the beginning of COVID" he does not provide any information
> regarding how long the prison law library was closed or state whether
> he attempted to access the library at any time before the statute of

19

1  limitations expired on December 6, 2021. He also does not specify
how long he was deprived of his legal materials. Nor does he explain
2  how his lack of law library access prevented him from preparing and
filing the Petition. Without any supporting details or documentation,
3  Petitioner's generalized allegations are too conclusory to warrant
equitable tolling. *See Davis v. Kibler*, No. 2:21-cv-07620-FMO-JDE,
4  2022 WL 2121907, at *6, 2022 U.S. Dist. LEXIS 97273, at *19 (C.D.
Cal. Feb. 24, 2022) ("Petitioner did not provide a specific
5  explanation as to how COVID-19 hindered his ability to timely file
his federal petition. While he alleges general difficulties in accessing
6  the prison library during COVID-19 lockdowns, Petitioner fails to
provide specific facts to show that lack of access to the library
7  'actually prevented' him from timely filing his federal petition.");
*Dragasits v. Covello*, No. 3:21-cv-1459-CAB-MDD, 2022 WL
8  207730 at *7, 2022 U.S. Dist. LEXIS 12747 at *19 (S.D. Cal. Jan.
24, 2022) ("[G]eneral claims of prison lockdowns and lack of access
9  to the prison law library as a result of the COVID-19 pandemic alone
are insufficient amount to the 'extraordinary circumstances' required
10  to entitle an inmate to equitable tolling."); *see generally Robinson v.
Marshall*, 405 F. App'x 241, 242 (9th Cir. 2010) ("[Petitioner]
11  contends that he is entitled to equitable tolling based on his inability
to access the law library during extended prison lockdowns. This
12  contention fails because [petitioner] did not demonstrate how limited
access to the library was the cause of his failure to timely file his
13  petition.").

14  Cervantes v. Cisneros, No. 2:22-cv-0367-SSS-MAA, 2022 WL 4082488, at *5 (C.D. Cal. July

15  28, 2022), rep. and reco. adopted, 2022 WL 4088064 (C.D. Cal. Sept. 6, 2022); see also Edgin v.

16  Covello, No. 20-cv-07565-JD, 2021 WL 4355333, at *4-5 (N.D. Cal. Sept. 24, 2021) (petitioner's

17  unsupported allegations concerning COVID-19's effect on his access to law library and outgoing

18  and incoming mail were insufficient to warrant equitable tolling).

19  For the reasons set out in the prior discussion, petitioner's general descriptions about the

20  effects of the COVID-19 pandemic are insufficient to demonstrate that he was diligent in

21  preparing and filing his state habeas petitions.  Therefore, he is not entitled to equitable tolling of

22  the statute of limitations.

23  **II. Exhaustion/Motion to Stay/Motion for DNA Testing**

24  Petitioner admits his claim 2 is unexhausted.  (See ECF No. 22 at 4-5.)  He seeks a stay of

25  these proceedings to permit the state courts to resolve his pending state habeas petition raising

26  that claim.  (Id.; ECF No. 16.)  Because this court finds above that the petition should be

27  dismissed as untimely, whether or not petitioner exhausted a claim is a moot inquiry.  This court

28  need not, and does not, address the exhaustion issue or the related stay issue.  For the same

1    reason, this court need not consider petitioner's motion for DNA testing.

2            For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

3            1. Respondent's motion to dismiss (ECF No. 11) be granted on the grounds that the

4    petition is untimely; and

5            2. Petitioner's motion to stay (ECF No. 16) and request for DNA testing (ECF No. 18) be

6    denied as moot.

7            These findings and recommendations will be submitted to the United States District Judge

8    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

9    being served with these findings and recommendations, any party may file written objections with

10   the court and serve a copy on all parties. The document should be captioned "Objections to

11   Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

12   filed and served within seven days after service of the objections.  The parties are advised that

13   failure to file objections within the specified time may result in waiver of the right to appeal the

14   district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the

15   party may address whether a certificate of appealability should issue in the event an appeal of the

16   judgment in this case is filed.  See Rule 11, Rules Governing § 2254 Cases (the district court must

17   issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

18   Dated:  November 2, 2022

19

20

21                                   DEBORAH BARNES
                                     UNITED STATES MAGISTRATE JUDGE
22

23   DLB:9
     DB Prisoner Inbox/Habeas/S/purt0199.mtd fr
24

25

26

27

28